UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE BEACON MUTUAL INSURANCE COMPANY, <br>       Plaintiff, <br><br> v. <br><br> THE ST. PAUL MERCURY INSURANCE COMPANY, <br>       Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )     C. A. No. 11-cv-559-M <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

This case presents "what some might regard as an oxymoron: an interesting insurance coverage question." *Vt. Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 39 (1st Cir. 2013). This saga could be captioned "The Mystery Of The Missing Insuring Agreement."

This diversity declaratory judgment action involves the termination of two employees by plaintiff Beacon Mutual Insurance Company (Beacon), and a subsequent settlement with one of them. At issue is whether an insurance policy issued by defendant St. Paul Mercury Insurance Company (St. Paul) covers the cost of the settlement Beacon paid to that former employee and further whether it will cover a possible settlement with the other former employee.

The insurance policy at issue references an Employment Practices Liability Insuring Agreement (EPLIA), but no document bearing that title was attached to or provided with the policy originally issued to Beacon. Several years after Beacon obtained the policy, St. Paul supplied a document entitled "Employment Practices Liability Insuring Agreement" that contains a grant of coverage and several exclusions. For example, coverage for losses owed under written contracts and agreements are excluded.

Beacon argues that the insurance policy it originally received is whole without a separate document captioned EPLIA, and the policy provides broad coverage encompassing the settlement with one former employee and a future settlement with the other. St. Paul responds that without the EPLIA there is no valid coverage, so this Court must either reform the policy to include the forgotten EPLIA or utilize the policy's liberalization notice to evaluate coverage under Beacon's prior policy. Either way, St. Paul asserts that there is not coverage for the settlement and potential settlement because of exclusions contained in the EPLIA and the prior policy.

On cross-motions for summary judgment, this Court must decide whether either party is entitled to judgment on Beacon's claims for a declaratory judgment, breach of contract, anticipatory breach of contract, bad faith refusal to pay, or breach of the duty of good faith and fair dealing.

## I.   BACKGROUND[1]

Beacon is a workers' compensation insurance carrier organized under Rhode Island law. In 2003, Beacon obtained an "Employment Practices PLUS+® Policy," Policy No. 104181647, from Travelers Casualty and Surety Company of America (the Travelers Policy) providing "claims made" coverage effective from October 1, 2003 to October 1, 2004. The Travelers Policy excludes from coverage damages for several types of claims, such as claims seeking severance pay, damages under an employment agreement, and payments based on unpaid services. Beacon renewed the Travelers Policy for the period October 1, 2004 to October 1, 2005 with the same terms.

---

[1]   The facts are taken from the undisputed facts contained in the statements of undisputed facts submitted by the parties. *See* DRI LR Cv 56.

2

For the October 1, 2005 to October 1, 2006 period, Beacon obtained from St. Paul a "SelectOne$^{SM}$ for Insurance Companies" Policy, No. 569CM0889 (the St. Paul-Travelers Policy[2]). (ECF No. 24-2.) Its Policy Declarations indicate that 104181647 was the "Prior Policy Number," and a Delivery Invoice included in the St. Paul-Travelers Policy states that it is a "Renewal of Policy #104181647." *Id.* at 2, 6. Beacon also renewed the St. Paul-Travelers Policy for the October 1, 2006 to October 1, 2007 period.

At the beginning of 2006, Employee A and Employee B were employed by Beacon.[3] Both entered into several written agreements with Beacon containing the terms of their employment. In April of 2006, Beacon terminated Employee A and Employee B "for cause." Employee A and Employee B subsequently were indicted on criminal charges, but neither was convicted of any crime.[4]

Both employees have demanded recovery from Beacon under various theories, including assertions that they are owed compensation under the terms of their employment agreements. Employee B also sought reimbursement for certain defense costs incurred in the criminal proceeding. Beacon settled with Employee B. This settlement included Beacon paying money to Employee B for contractual claims and money to reimburse Employee B's counsel for fees and costs associated with the criminal matter.

---

[2] This policy is referred to as the "St. Paul-Travelers Policy" because St. Paul and Travelers joined together to create The St. Paul Travelers Companies, Inc., and this policy bears the St. Paul Travelers logo.

[3] Since the Complaint refers to the two employees as Employee A and Employee B, and their names do not appear to have been included in any documents publically filed here, this Court also will refer to them as Employee A and Employee B.

[4] Although irrelevant to the motions before this Court, deposition testimony indicates that R.I.'s Attorney General prosecuted both employees for insurance fraud, and, after separate trials, each was either acquitted or had the charges dismissed.

Employee A has made numerous allegations against Beacon and has demanded recovery under various theories, including pursuant to his employment contracts. At the time this lawsuit was filed, there was not a settlement between Beacon and Employee A.

Beacon provided written notice of the terminations of Employee A and Employee B to St. Paul, characterizing them as "Circumstances that May Give Rise to Claims." Beacon supplemented this notice several times. St. Paul responded, denying coverage because "the only coverage for this matter . . . is for reasonable and necessary defense costs incurred in the defense of the Claim." St. Paul explained that several exclusions in the EPLIA appear to apply to the claims related to Employee A and Employee B. For example, the EPLIA states that the insurer is not liable for "amounts owed under a written contract or agreement" or for "compensation earned by the claimant in the course of employment but not paid by the Company," but the insurer will pay defense costs associated with such claims.

Beacon replied to the denial, asserting that it did not receive a copy of the EPLIA prior to putting St. Paul on notice of the claims of Employee A and Employee B. Since the EPLIA was not issued with the original St. Paul-Travelers Policy, Beacon argued that St. Paul could not rely on its exclusions to deny coverage. Beacon also notified St. Paul that it had settled with Employee B and sought to be reimbursed for the total amount of that settlement. Regarding Employee A, Beacon notified St. Paul that it anticipated engaging in settlement discussions and expected to be indemnified for any such settlement amount.

In November of 2011, Beacon filed this lawsuit seeking, among other things, "a judgment . . . declaring the rights, duties, obligations and/or other legal relations of" the parties. (ECF No. 1 at 7.)

## A.  The St. Paul-Travelers Policy

### 1.  The "Missing" Insuring Agreement

Generally speaking, the St. Paul-Travelers Policy provides employment liability insurance coverage. Its Declarations state that it provides "claims made" coverage for the period October 1, 2005 through October 1, 2006. (ECF No. 24-2 at 2-3.) The Declarations also state that "Coverage is effective <u>only</u> for Insuring Agreements made part of this Policy <u>and</u> for which an Each Insuring Agreement Limit of Liability is set forth below." *Id.* at 2 (emphases added). The Table of Contents begins with the following statement: "This policy is not valid without a Policy Declarations <u>and</u> one or more insuring agreements. The only Insuring Agreements made a part of this policy are those set forth and selected in the Policy Declarations." *Id.* at 9 (emphasis added).

The parties agree that no insuring agreement captioned EPLIA was physically attached to or provided with the St. Paul-Travelers Policy when it was originally issued.

### 2.  The Liberalization Notice

The St. Paul-Travelers Policy contains a Liberalization Notice[5] explaining that two insurance companies — St. Paul and Travelers — joined together to create The St. Paul-Travelers Companies, Inc. *Id.* at 27. It specifies that in order "[t]o simplify procedures and better serve [its] customers, many Specialty Commercial insurance policies that were previously issued by both companies will now be written only on St. Paul Travelers forms."[6] *Id.* The Liberalization Notice provides that the "new St. Paul Travelers Policy, which may be one

_____

[5]  It is captioned "NOTICE OF LIBERALIZATION – DESCRIBED BROADENING OF COVERAGE BASED ON PROVISIONS OF CERTAIN RENEWED OR REPLACED POLICIES." *Id.*

[6]  Under the Travelers policy forms used in the prior policy, the insuring agreement provision, exclusions, and other general terms and conditions all were incorporated into a single form.

package policy providing coverages that were previously provided through separate Travelers policies, will contain coverage terms and conditions <u>substantially similar</u> to those in your Travelers policy or policies." *Id.* (emphasis added). Further, it explains that "in order to make this transition as easy as possible for you, we will adjust any claims under your new St. Paul Travelers policy based upon the terms and conditions of either your expiring Travelers policy that would have applied to the claim or your first new St. Paul Travelers policy, <u>whichever is broader . . . .</u>" *Id.* (emphasis added).

Beacon renewed the St. Paul-Travelers Policy for the 2006-2007 term, under Policy No. EC05700047. In October of 2007, St. Paul issued a Policy Change Endorsement adding Form IN006 to the 2006-2007 policy. This document is titled "EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT" in the top left and has the identifier "IN006" as well as "Employment Practices Liability Insuring Agreement" at the bottom.[7] Form IN006 contains the following grant of coverage:

> The Insurer shall pay on behalf of the Insured Loss for which the Insureds become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period . . . for an Employment Practices Act taking place before or during the Policy Period, provided that such Claim is brought by or on behalf of any . . . past, present or prospective Employee, officer of the Company, Independent Contractor or Leased Employee.

Form IN006 contains several exclusions. For example, it states that the Insurer is "not liable for that part of Loss that constitutes [] amounts owed under a written contract or agreement; . . . compensation earned by the claimant in the course of employment but not paid by the Company including any unpaid salary, wages, or bonuses; . . . fringe benefits, [or] deferred payments . . . ."

---

[7] To avoid confusion going forward, this Court will use "Form IN006" when it refers to the specific document entitled "EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT" and bearing the identifier IN006 at bottom.

In March of 2011, St. Paul issued an Endorsement adding Form IN006 to the 2005-2006 St. Paul-Travelers Policy at issue in this case.

## B.    This Lawsuit

Beacon filed a six count complaint against St. Paul. (ECF No. 1.) The first three counts turn on coverage, under the St. Paul-Travelers-Policy, for Beacon's settlement with Employee B and the claims of Employee A. *Id.* at 6-8. Count one seeks a declaratory judgment under 28 U.S.C. § 2201 et seq. "declaring the rights, duties, obligations, and/or other legal relations of" of Beacon and St. Paul "under the [St. Paul-Travelers] Policy." *Id.* at 6-7. Count two is a breach of contract claim as to Employee B wherein Beacon alleges that St. Paul has breached the St. Paul-Travelers' Policy by failing to indemnify Beacon in connection its settlement with Employee B.[8] *Id.* at 7. Count three is an anticipatory breach of contract claim as to Employee A wherein Beacon alleges that St. Paul has anticipatorily breached the St. Paul-Travelers Policy by asserting that its only obligation is to pay certain defense costs and it will not indemnify Beacon for any amount it may pay to settle Employee A's claims. *Id.* at 8.

The latter three counts involve bad faith (collectively, the Bad Faith Claims). *Id.* at 9-11. Counts four and five are claims for bad faith refusal to pay, the former based on R.I.G.L. § 9-1-33 and the latter based on common law. *Id.* at 9-10. In these counts, Beacon contends that St. Paul's refusal to pay in connection with Employee B and its anticipatory refusal to pay in connection with Employee A are wrongful and in bad faith. *Id.* at 9-10. Finally, count six is a claim for breach of the common law implied covenant of good faith and fair dealing. *Id.* at 10-11. Beacon alleges that St. Paul breached this covenant by its "wrongful and bad faith refusal to pay . . . pursuant to the provisions of the [St. Paul-Travelers] Policy." *Id.* at 10.

---

[8] The caption of count two in the complaint erroneously identifies the employee as Employee A; count two actually pertains to Employee B. (ECF No. 1 at 7; ECF No. 23-1 at 1 n.1.)

## C. The Pending Motions

In August of 2013, both parties moved for summary judgment. Beacon moved for summary judgment as to all six counts (ECF No. 23).[9] St. Paul filed a motion for partial summary judgment under seal. (ECF No. 25.) St. Paul's motion seeks partial[10] summary judgment in that it asks for five particular declarations in connection with count one and summary judgment in connection with the other five counts.[11] *Id.* Regarding count one, St. Paul seeks a declaratory judgment stating the following: (i) the St. Paul-Travelers Policy either is reformed to include Form IN006 or, via the Liberalization Notice, coverage is determined by the prior Travelers Policy; (ii) St. Paul is not obligated to indemnify Beacon for amounts owed on written employment contracts or severance agreements; (iii) there is no coverage for attorneys' fees and costs incurred in connection with defending criminal proceedings; (iv) there is no coverage for the settlement between Beacon and Employee B; and (v) St. Paul's coverage position for claims that have been or may be asserted against Beacon by Employee A is correct. *Id.*

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure directs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Essentially, Rule 56(c) mandates the entry

---

[9] While Beacon states that it seeks summary judgment on all six counts, its Memorandum of Law addresses only the first count. (ECF No. 23-1.)

[10] At oral argument, St. Paul explained that its motion was "partial" because it did not address defense costs, a matter that would necessarily involve factual issues regarding what costs are reasonable. Under either Form IN006 or the prior Travelers Policy, coverage appears to include defense costs.

[11] In addition, St. Paul moved to strike a paragraph of Beacon's Statement of Undisputed Facts, as well as an Exhibit in support of Beacon's Motion for Summary Judgment. (ECF No. 30.) This Court denied St. Paul's motion to strike at the November 21, 2013 hearing on these motions.

of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). When evaluating "cross-motions for summary judgment, the standard does not change; [courts] view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." *Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Trust Fund ex rel. Bolton*, 736 F.3d 33, 36 (1st Cir. 2013) (quoting *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)). This case is here by virtue of diversity jurisdiction, and the substantive law of the State of Rhode Island applies. *See Rosciti v. Ins. Co. of Penn.*, 659 F.3d 92, 96 (1st Cir. 2011).

## III.   ANALYSIS

Rhode Island courts interpret insurance policies by "applying the rules for construction of written instruments." *Allstate Ins. Co. v. Russo*, 641 A.2d 1304, 1306 (R.I. 1994); *see also Derderian v. Essex Ins. Co.*, 44 A.3d 122, 127 (R.I. 2012) (courts "interpret insurance policy terms in accordance to the rules of construction that govern contracts"). "Contract interpretation presents, in the first instance, a question of law, and is therefore the court's responsibility." *Fashion House, Inc. v. K mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). "Under Rhode Island law, 'when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. The contract terms must be applied as written and the parties [] bound by them.'" *TranSched Sys. Ltd. v. Fed. Ins. Co.*, 958 F.Supp.2d 331, 334 (D.R.I. 2013) (quoting *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 551 (R.I. 1990)).

In determining "whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." *Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I. 2004) (quoting *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000)); *see also Allstate Ins. Co. v. Ahlquist*, 59 A.3d 95, 98 (R.I. 2013) (quoting *Casco Indem. Co. v. Gonsalves*, 839 A.2d 546, 548 (R.I. 2004)). "A court should not, through an effort to seek out ambiguity when there is no ambiguity, make an insurer assume a liability not imposed by the policy." *Ardente v. Standard Fire Ins. Co.*, --- F.3d ---, No. 13-2000, 2014 WL 944766, at *1 (1st Cir. Mar. 12, 2014) (quoting *McGowan v. Conn. Gen. Life Ins. Co.*, 289 A.2d 428, 429 (R.I. 1972)). In other words, courts must "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1083 (R.I. 2010) (quoting *Mallane v. Holyoke Mut. Ins. Co.*, 658 A.2d 18, 20 (R.I. 1995)). When no ambiguity exists in the terms of an agreement, "judicial construction is at an end for the terms will be applied as written." *Monahan v. Girouard*, 911 A.2d 666, 672 (R.I. 2006) (quoting *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004)).

### A.    Counts One Through Three

The parties' summary judgment arguments focus primarily on whether and to what extent the St. Paul-Travelers Policy provides coverage for Beacon's settlement with Employee B and its anticipated possible settlement with Employee A.

### 1.  Count One:  Declaratory Judgment

In count one, Beacon seeks a declaratory judgment declaring the rights, duties, and obligations of Beacon and St. Paul under the St. Paul-Travelers Policy. (ECF No. 1 at 6-7.)

### a. The Parties' Arguments

In its motion for summary judgment on count one, Beacon seeks a declaration that the St. Paul-Travelers Policy provides coverage for the settlement with Employee B and a future possible settlement with Employee A. Beacon's perspective is essentially two-fold: there was no document entitled EPLIA contained within the St. Paul-Travelers Policy materials it originally received; and the St. Paul-Travelers Policy it originally received provides broad coverage, including indemnification for the settlement it paid in connection with Employee B and a future settlement it may pay in connection with Employee A.

St. Paul opposes Beacon's motion and also seeks summary judgment on count one. In its motion, St. Paul seeks a declaration that (i) the St. Paul-Travelers Policy is reformed to include Form IN006; or (ii) pursuant to the St. Paul-Travelers Policy's Liberalization Notice, coverage is governed by the prior Travelers Policy.[12] St. Paul argues that the EPLIA is Form IN006, a distinct separate document that was inadvertently omitted from the documents originally issued to Beacon. Without Form IN006, St. Paul contends that there is no valid coverage under the St. Paul-Travelers Policy. Specifically, St. Paul asserts that there is no grant of coverage anywhere in the St. Paul-Travelers Policy documents it originally issued to Beacon. Regardless of whether this Court reforms the St. Paul-Travelers Policy to include Form IN006 or follows its Liberalization Notice to evaluate coverage under the prior Travelers policy, St. Paul seeks judgment as a matter of law that it was correct in declining to indemnify Beacon in connection with Beacon's settlement with Employee B and further that its coverage position is correct in connection with a possible settlement between Beacon and Employee A.

---

[12] Similar to Form IN006, the Travelers Policy excludes coverage for claims seeking severance pay, damages under written employment agreements, and payments based on unpaid services.

Regarding the EPLIA's presence within the documents it received, Beacon contends that since the name EPLIA is mentioned throughout the St. Paul-Travelers Policy but no document bearing that name was attached thereto, then the EPLIA must be integrated within the pages it received. Beacon points to several places in the St. Paul-Travelers Policy where "Employment Practices Liability Insuring Agreement" is listed. For example, Beacon points to the Table of Contents' listing of "Employment Practices Liability Insuring Agreement" under the header "Insuring Agreements." (ECF No. 24-2 at 9.) Beacon also points to the Declarations section entitled "Retentions" where an amount of $100,000 is set forth for each "Claim" under the "Employment Practices Liability Insuring Agreement." *Id.* at 3. And Beacon also notes the inclusion of "Employment Practices Liability Insuring Agreement" under the heading "Duty to Defend." *Id.*

When asked at oral argument about the language in the St. Paul-Travelers Policy stating that "Coverage is effective only for Insuring Agreements made part of this Policy and for which an Each Insuring Agreement Limit of Liability is set forth below," *id.* at 2 (emphasis added), Beacon responded that the EPLIA is "made part of the policy" in that it is part and parcel of the policy since it is identified in the Declarations and mentioned elsewhere. According to Beacon, there are indicia that the EPLIA is contained within the documents it received: the EPLIA is identified in the Declarations page; there is a limit of liability; there is a retention; and there is a duty to defend. *See id.* at 2-3. Beacon seems to suggest that the EPLIA is hiding in plain sight within the policy documents it originally received.

In further support of its argument that the EPLIA is not a separate document but rather was integrated within the policy documents it received initially, Beacon points out that neither EPLIA nor Form IN006 is included in the Policy Form List containing "a list of all forms

12

included in [the] policy." *Id.* at 7. Since neither EPLIA nor Form IN006 was included on this list, Beacon contends that they were not separate documents that needed to be attached, but rather were included within the documents it initially received. Beacon also relies on a letter, from its attorney to a claims handler, concerning a conversation they had regarding the EPLIA.[13] (ECF No. 23-1 at 19 n.6; ECF No. 24-5 at 2-4.)

When asked at oral argument what language in the St. Paul-Travelers Policy specifies what actually is covered by the policy, Beacon responded that all necessary terms are set forth in the documents it received. Beacon focused on the fact that the coverage is "claims made" and referenced terms in the Declarations. Beacon took the position that all claims not excluded are covered. According to Beacon, the terms and definitions contained in the St. Paul-Travelers Policy documents it originally received provide coverage for its claims in connection with Employees A and B.

Beacon also has a fallback position: if the phrase "Insuring Agreements made part of this Policy" is ambiguous, then under Rhode Island law, it must be construed against the insurer and in favor of coverage. Therefore, if this Court were to find the phrase ambiguous, then Beacon contends that well-established Rhode Island law compels this Court to resolve the ambiguity in Beacon's favor.

St. Paul seeks not only a declaration that coverage under the St. Paul-Travelers Policy is evaluated under either the Form IN006 or the prior Travelers Policy, but also declarations stating that it is not obligated to indemnify Beacon for amounts owed to former employees under written contracts or severance agreements; there is no coverage for attorneys' fees and costs incurred by current or former employees in connection with defending criminal proceedings against them;

---

[13] This correspondence was the subject of St. Paul's Motion to Strike. (ECF No. 30.)

there is no coverage for the settlement between Beacon and Employee B; and St. Paul's position regarding coverage for claims that have been or will be asserted against Beacon by Employee A is correct. (ECF No. 25.)

St. Paul maintains that the St. Paul-Travelers Policy — as originally issued without Form IN006 — does not constitute a complete policy because there is no grant of coverage. More specifically, St. Paul asserts that Form IN006, the document containing the grant of coverage, was inadvertently omitted, and, without it, there is no valid coverage. While Beacon contends that the EPLIA exists within the documents originally issued, St. Paul counters that the documents issued expressly and repeatedly contemplate the inclusion of a separate insuring agreement document called "Employment Practices Liability Insuring Agreement." Further, St. Paul asserts the documents issued make clear that absent such an insuring agreement, there is no valid coverage. For example, St. Paul emphasizes the word "and" in the following statement in the Declarations: "Coverage is effective only for Insuring Agreements made part of this Policy <u>and</u> for which an Each Insuring Agreement Limit of Liability is set forth below." (ECF No. 24-2 at 2 (emphasis added)). St. Paul acknowledges the limit of liability but notes that the word "and" also requires an insuring agreement. Since no insuring agreement was attached to or included with St. Paul-Travelers Policy's originally issued, St. Paul contends that no insuring agreement was "made part of" the policy, so there is no valid coverage.

In light of the missing insuring agreement and lack of valid coverage, St. Paul offers two solutions: (i) this Court could find that omitting Form IN006 was a scrivener's error and reform the St. Paul-Travelers Policy to include it; or (ii) this Court could find no valid coverage based on the unambiguous terms of the St. Paul-Travelers Policy and therefore follow its Liberalization Notice. The Liberalization Notice dictates that claims will be adjusted under either the St. Paul-

Travelers Policy or the prior Travelers policy, "whichever is broader." (ECF No. 24-2 at 27-28.) Since the St. Paul-Travelers Policy provides no valid coverage, the coverage provided by the prior Travelers Policy is necessarily "broader." Accordingly, the Liberalization Notice directs this Court to evaluate claims under the "broader" coverage provided by the prior Travelers Policy, No. 104181647.

### b. This Court's Analysis

This Court's analysis of the St. Paul-Travelers Policy begins and ends with the written insurance policy originally issued to Beacon.[14] To ascertain what is covered, this Court "considers the policy in its entirety and does not 'establish ambiguity by viewing a word in isolation or by taking a phrase out of context.'" *Bliss Mine Rd. Condo. Ass'n*, 11 A.3d at 1083 (quoting *Streicker*, 583 A.2d at 552); *see also Emsbo v. Fireman's Fund Ins. Co.*, 950 F.Supp.2d 369, 373 (D.R.I. 2013). Viewing the policy in its entirety and giving the language employed its plain, ordinary, and usual meaning, *see Ahlquist*, 59 A.3d at 98, this Court finds that there is no valid coverage because no requisite insuring agreement was attached to, included with, or otherwise made part of the policy. For valid coverage, the plain language of the St. Paul-Travelers Policy mandates that an Insuring Agreement be "made part of" the policy. The Employment Practices Liability <u>Insuring Agreement</u> was not "made part of" the St. Paul-Travelers Policy. There is no evidence before this Court of any other insuring agreement being "made part of" the St. Paul-Travelers Policy.

Although Beacon goes to great lengths in attempting to unearth an insuring agreement hiding within the text of the documents it received, this Court must give terms their plain, ordinary, and usual meanings. *Garden City*, 852 A.2d at 542. Reviewing the St. Paul-Travelers

---

[14] As such, this Court need not evaluate the parties' arguments that go beyond its text.

Policy "in an ordinary, common sense manner," one cannot find that an insuring agreement is subsumed within the pages of the St. Paul-Travelers Policy documents originally issued to Beacon. *Id.* (quoting *Textron Inc. v. Aetna Cas. & Surety Co.*, 638 A.2d 537, 541 (R.I. 1994)). Although invited to discern an ambiguity, this Court declines to "depart from the literal language of the policy . . . to read ambiguity into a policy where none is present." *Ahlquist*, 59 A.3d at 99 (quoting *Beacon Mut. Ins. Co. v. Spino Bros. Inc.*, 11 A.3d 645, 649 (R.I. 2011)). Moreover, while Beacon admirably tries to cobble together definitions and exclusions to conjure up the delineations of what is covered by the St. Paul-Travelers Policy, this Court cannot read the policy in such a fragmentary fashion; this Court must take "an overall view of the policy" giving "equal emphasis . . . to all its relevant parts." *McGowan*, 289 A.2d at 429.

Because an insuring agreement was not "made part of" the St. Paul-Travelers Policy, there is no valid coverage. The Liberalization Notice in the St. Paul-Travelers Policy dictates application of the terms and conditions of either the expiring prior Travelers Policy or the new St. Paul-Travelers Policy, "whichever is broader." (ECF No. 24-2 at 27.) Since there is no valid coverage under the St. Paul-Travelers Policy, the coverage provided by the prior Travelers Policy unquestionably is "broader" coverage. Therefore, under the Liberalization Notice, the prior Travelers Policy (No. 104181647) becomes the operative document for evaluating coverage for Beacon's claims in connection with Employees A and B.

Section III of the prior Travelers Policy contains Exclusions. Part B of Section III states that Travelers

> shall have no duty to pay Damages, but will pay Defense Expenses, resulting from any Claim seeking: . . . 2. severance pay, damages or penalties under an express written Employment Agreement, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services.

On the present record, it is undisputed that both Employees A and B have asserted that Beacon owes them compensation under the terms of their employment agreements. It is further undisputed that the settlement between Beacon and Employee B included payments for Employee B's contractual claims and reimbursement for Employee B's attorneys' fees and costs in connection with the criminal matter.

While the plain language of Section III.B.2. appears to exclude coverage for the contractual portion of Employee B's settlement with Beacon, the parties' arguments have scarcely touched on whether any of Beacon's settlement with Employee B is covered by the Travelers Policy. Under these circumstances, this Court finds that the most prudent course of action is to provide the parties with time to attempt to resolve their coverage dispute under the Travelers Policy. Furthermore, since there is no record evidence regarding a settlement between Employee A and Beacon, this Court would be ill advised to attempt to determine what coverage exists for a hypothetical future settlement agreement. However, any future claims based on a settlement with Employee A will be subject to the exclusions contained in the Travelers Policy. In addition to coverage determinations regarding those settlements, a determination also will need to be made regarding the amount of defense costs.

### c. Conclusion

Beacon's motion for summary judgment on count one is DENIED. St. Paul's motion for summary judgment on count one is GRANTED IN PART: this Court finds that, pursuant to its Liberalization Notice, coverage under the St. Paul-Travelers Policy is governed by the terms and conditions of the prior Travelers Policy, No. 104181647, including its exclusions. Based on the current record, this Court will not issue any of the additional declarations sought by St. Paul at

this time. The parties are directed to attempt to resolve their dispute under the terms of Travelers Policy.

## 2. Counts Two And Three: Breaches Of Contract

Count two alleges that St. Paul breached its policy with Beacon by failing to indemnify Beacon for the amount of the settlement that Beacon paid in connection with Employee B. (ECF No. 1 at 7-8.) Count three alleges that because St. Paul asserts that it is only obligated to pay defense costs, it will breach its policy with Beacon by refusing to indemnify Beacon for a possible forthcoming settlement with Employee A. *Id.* at 8.

### a. The Parties' Arguments

Although Beacon moved for summary judgment in connection with all six counts, it did not address counts two or three in its memorandum. (ECF No. 23-1.) In its objection to Beacon's motion, St. Paul pointed this out, stating that Beacon "offered no evidence at all – much less undisputed evidence – with regard to any of the alleged 'damages' or legal expenses for which it seeks recovery . . . ." (ECF No. 28 at 9.) However, at oral argument, Beacon informed this Court that it was continuing to press its summary judgment motion in connection with counts two and three.

Focusing first on Beacon's motion, St. Paul seeks to defeat the motion because Beacon has not offered evidence of damages, an element of a breach of contract claim on which Beacon bears the burden of proof. Since Beacon, as the movant, has not demonstrated that it "is entitled to judgment as a matter of law," St. Paul contends that Beacon's summary judgment motion on the breach of contract claims must be denied. Regarding its own motion, St. Paul contends that not only did it not breach, but also that Beacon has failed to offer evidence necessary to prove its claims.

## b. This Court's Analysis

"[T]he burden of proof in a breach of contract action rests with a plaintiff to show that a defendant breached the contract." *Gorman v. St. Raphael Acad.*, 853 A.2d 28, 37 (R.I. 2004). "To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)). Regarding anticipatory breach, the R.I. Supreme Court has quoted Professor Williston: "in order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional." *Thompson v. Thompson*, 495 A.2d 678, 682 (R.I. 1985) (quoting 11 Williston, Contracts § 1322 at 130 (3d ed. Jaeger 1968)). The R.I. Supreme Court noted that the Restatement of Contracts provides that "a repudiation can be evidenced by either a statement to that effect or 'a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.'" *Id.* (quoting 2 Restatement (Second) Contracts § 250 (b) at 272 (1981)). However, "[a] mere allegation of failure to fulfill the contract is insufficient to establish repudiation." *Thompson*, 495 A.2d at 682.

Although Beacon seeks summary judgment on its contract claims, at this juncture there is no record evidence that St. Paul has breached the contract in connection with Employee B's settlement and there is no record evidence that St. Paul has done anything but say it will not indemnify Beacon for a potentially forthcoming settlement regarding Employee A. Beacon, therefore, has not shown entitlement to judgment as a matter of law on either of its contract claims.

19

Turning to St. Paul's motion, it "may be entitled to summary judgment in one of two ways: (1) by negating an essential element of Plaintiff['s] case through submission of affirmative evidence; or (2) by demonstrating that the evidence is insufficient to establish an essential element of Plaintiff['s] claim." *Estate of Frusher v. Abt Assocs., Inc.*, 643 F.Supp.2d 220, 224 (D.R.I. 2009) (citing *Celotex*, 477 U.S. at 331). St. Paul has taken the latter route by demonstrating that Beacon has failed to provide evidence for the requisite elements of its contract claims. Therefore, on this record, St. Paul is entitled to summary judgment on both breach of contract claims.

### c. Conclusion

Beacon's motion for summary judgment on counts two and three is DENIED. St. Paul's motion for summary judgment on counts two and three is GRANTED.

### B.  Counts Four Through Six: Bad Faith Claims

Although counts four, five, and six are captioned differently, all involve allegations of bad faith: count four is bad faith under R.I.G.L. §9-1-33; count five is common law bad faith refusal to pay claims; and count six is breach of the common law implied covenant of good faith and fair dealing. (ECF No. 1 at 9-11.) Given the posture of this case, the Bad Faith Claims can be treated collectively.

### 1.  The Parties' Arguments

Beacon did not address the Bad Faith Claims in its memorandum. (ECF No. 23-1.) In its objection to Beacon's motion, St. Paul specified that Beacon presented no evidence, legal authority, or argument in favor of these claims. (ECF No. 28 at 9.)

At oral argument, Beacon stated that it was no longer pursuing summary judgment in connection with its Bad Faith Claims and further suggested that these counts are not ripe for

consideration. Beacon supposed that this Court might stay consideration of those claims.[15] St. Paul responded that it was continuing to press its summary judgment motion with regard to all counts and explained that its motion was designed to put Beacon to its proof on its Bad Faith Claims and Beacon had provided no basis for them.

St. Paul argues entitlement to summary judgment because the coverage issues, at a minimum, are "fairly debatable," and, therefore, cannot give rise to bad faith claims. *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002). St. Paul further argues that Beacon lacks any evidence suggesting it committed an "intentional failure . . . to determine whether there [was] a lawful basis to deny the claim" or otherwise acted unreasonably. *Id.* at 1011. Regardless of this Court's findings on coverage, St. Paul contends that there is no evidence to support the Bad Faith Claims so summary judgment should enter for it on counts four, five, and six. At oral argument, when asked where the evidence was regarding the Bad Faith Claims, Beacon admitted there was no such evidence.

## 2. This Court's Analysis

In *Skaling v. Aetna Insurance Company*, the R.I. Supreme Court found that an insurance company may be liable for bad faith in connection with a fairly debatable claim "in situations in which the carrier intentionally or recklessly failed to properly investigate a claim, or failed to subject its investigation to an appropriate cognitive evaluation and review, or otherwise acted in an oppressive and unreasonable manner." *Id.* at 1006. It explained "that '[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable [minds] could conclude

---

[15] Beacon points out that this Court stayed bad faith claims in *TranSched*, 958 F.Supp.2d at 338. While that assertion is correct, the *TranSched* opinion denied an insurer's motion to dismiss and stayed bad faith claims because those claims would disappear if TranSched did not prevail in its declaratory judgment claim. *Id.* at 336-38. *TranSched* is inapposite as here Beacon is faced with a motion for summary judgment and it has failed to provide evidence or argument as to why its Bad Faith Claims should survive.

that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.'" *Id.* at 1011 (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000)).

The U.S. Supreme Court has instructed that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Here, Beacon bears the burden of proof on its Bad Faith Claims. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F.Supp.2d 317, 329 (D.R.I. 1999), *aff'd*, 217 F.3d 8 (1st Cir. 2000) ("The applicable standard in determining whether one has breached the implied covenant of good faith and fair dealing is whether or not the actions in question are free from arbitrary or unreasonable conduct."); *Zarrella v. Minn. Mut. Life Ins. Co.*, 824 A.2d 1249, 1261 (R.I. 2003) (success on a common law bad-faith claim[16] in Rhode Island requires that plaintiff "demonstrate the absence of a reasonable basis for denying the policy benefits and that defendant had knowledge or recklessly disregarded the lack of a reasonable basis for denying the claim"); *Labonte v. Nat'l Grange Mut. Ins. Co.*, 810 A.2d 250, 254 (R.I. 2002) ("plaintiff did not meet his burden in opposing defendant's summary judgment motion on the [§ 9-1-33] bad-faith count"); *Skaling*, 799 A.2d at 1015 (The R.I. Supreme Court has held that an "'implied covenant of good faith and fair dealing' . . . is merely a recitation of an element of bad faith . . . that was subsequently codified in § 9-1-33 and is not a separate and distinct claim.").

---

[16] This Court need not decide whether "Rhode Island's enactment of a statutory cause of action for insurer bad faith codified, and thus supplanted, the common law action." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 378 (1st Cir. 1991).

Beacon has failed to provide any evidence in connection with the Bad Faith Claims. There is no evidence in the summary judgment record that St. Paul did anything other than deny coverage based on exclusions, set forth the rates it would pay Beacon's counsel, and propose an allocation for defense costs. Since Beacon has not presented evidence constituting the requisite elements of its Bad Faith Claims, it has failed to make a "sufficient showing" for those claims to persist. Therefore, at this juncture and on this record, St. Paul is entitled to summary judgment on the Bad Faith Claims.

### 3. Conclusion

Beacon withdrew its motion for summary judgment as to counts four, five, and six. St. Paul's motion for summary judgment on counts four, five, and six is GRANTED.

## IV.    CONCLUSION

Beacon's Motion for Summary Judgment (ECF No. 23) is DENIED. St. Paul's Motion for Partial Summary Judgment (ECF No. 25) is GRANTED IN PART as to count one and GRANTED as to counts two, three, four, five, and six. Regarding count one, this Court declares that, pursuant to its Liberalization Notice, coverage under the St. Paul-Travelers Policy is governed by the terms and conditions of the prior Travelers Policy, No. 104181647. Based on the current record, this Court will not issue any of the additional declarations sought by St. Paul. The parties are directed to attempt to resolve their dispute under the terms of Travelers Policy.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge
March 27, 2014